## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

Case No. 1:23-cv-9440-JHR

David Bradberry,

     Plaintiff,

vs.

Abercrombie & Fitch Co., Michael S.
Jeffries, Matthew Smith, and The Jeffries
Family Office, LLC,

     Defendants.

_____/

## MEMORANDUM OF LAW IN SUPPORT OF
## <u>MICHAEL S. JEFFRIES' MOTION TO DISMISS THE AMENDED COMPLAINT</u>

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ..........................................................................................1

ALLEGATIONS OF THE AMENDED COMPLAINT ......................................................2

    A.   The Defendants, Abercrombie, and Mr. Jeffries ........................................................2

    B.   The Plaintiff, Bradberry ............................................................................................3

ARGUMENT ........................................................................................................................4

    A.   "Count IX: Battery/Violation of Section 130" Either (1) Should Be
         Dismissed as it Pleads a Non-existent Claim for Which Relief Cannot be
         Granted, or (2) Should Be Stricken as it Pleads Immaterial, Impertinent, or
         Scandalous Matters. .................................................................................................4

         1.   Count IX Should Be Dismissed as it Pleads a Non-existent Claim for
             Which Relief Cannot be Granted. ....................................................................4

         2.   In the Alternative, the Allegations of Count IX Should Be Stricken as
             Immaterial, Impertinent, or Scandalous. .........................................................6

    B.   Count X: Intentional Infliction of Emotional Distress ("IIED") Should Be
         Dismissed as it Is Duplicative of Plaintiff's Intentional Tort Claims .........................7

    C.   Count XI: Administrative Code § 10-1101—*et. seq.* Should Be Dismissed for Failure
         to Plead the Required Gender Motivation or Gender Animus. ...................................8

    D.   The TVPRA Related Counts XII - XV are Barred by the 10-year Statute of
         Limitations. ..............................................................................................................10

         1.   The 10-year Statute of Limitations Ran Years Before Plaintiff Filed this
             Lawsuit. ..........................................................................................................10

         2.   Equitable Tolling Does Not Salvage Plaintiff's Untimely TVPRA claims. .......11

         3.   The Continuing Violation Doctrine Does Not Revive Plaintiff's Untimely
             TVPRA Claims. ...............................................................................................13

CONCLUSION ...................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Abdullajeva v. Club Quarters, Inc.*,
No. 96-cv-0383 (LMM), 1996 WL 497029 (S.D.N.Y. Sept. 3, 1996) .........................................14

*Adams v. Smith*, No. 8:07-cv-0452 (LEK/RFT),
2015 WL 4139686 (N.D.N.Y. July 9, 2015) ...............................................................................14

*Ardolf v. Weber*, No. 18-cv-12112 (GBD/SN),
2020 WL 5209525 (S.D.N.Y. Sept. 1, 2020)...............................................................................10

*Blankman v. Cnty. of Nassau*, 819 F. Supp. 198 (E.D.N.Y. 1993).................................................14

*Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000)........................................................................12

*Brewton v. City of New York*, 550 F. Supp. 2d 355 (E.D.N.Y. 2008).............................................7

*Centeno v. City of New York*, No. 16-cv-2393 (VSB),
2019 WL 1382093 (S.D.N.Y. Mar. 27, 2019) ..............................................................................7

*Christian v. Town of Riga*, 649 F. Supp. 2d 84 (W.D.N.Y. 2009)...................................................4

*Cordero v. Epstein*,
22 Misc. 3d 161, 869 N.Y.S.2d 725 (N.Y. Sup. Ct. 2008) ............................................................9

*Crews v. Cty. of Nassau*, 996 F. Supp. 2d 186 (E.D.N.Y. 2014)....................................................7

*Desuze v. Ammon*, 990 F.3d 264 (2d Cir. 2021) ....................................................................13, 15

*Doe v. Doe*, 83 Misc. 3d 1282(A), 216 N.Y.S.3d 896 (N.Y. Sup. Ct. 2024) .................................5

*Doe v. Olive Leaves, Inc.*, 2024 WL 3048373 (E.D.N.Y. Feb. 16, 2024) .......................................4

*Dwares v. City of New York*, 985 F.2d 94 (2d Cir. 1993)..............................................................14

*E.E.O.C. v. A. Sam & Sons Prod. Co., Inc.*, 872 F. Supp. 29 (W.D.N.Y. 1994) ............................9

*Engelman v Rofe*, 194 A.D.3d 26 (1st Dept. 2021) ........................................................................8

*Garcia v. Comprehensive Ctr., LLC*,
No. 17-cv-8970 (JPO), 2018 WL 3918180, (S.D.N.Y. Aug. 16, 2018) .........................................9

*Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156 (S.D.N.Y. 2019).............................12

**Cases**                                                                                    **Page(s)**

*Goff v. Clarke*, No. 98-2101, 2002 WL 126276 (N.Y. Sup. Ct. Jan. 22, 2002),
*aff'd as modified*, 302 A.D.2d 725, (3d Dept. 2003) .......................................................6

*Gonzalez v. Hasty*, 802 F.3d 212 (2d Cir. 2015).................................................................13

*Gottwald v. Sebert*, 2016 N.Y. Slip Op. 32815(U),
2016 WL 1365969 (Sup. Ct., N.Y. County 2016) ...........................................................9

*Grimes v. Fremont Gen. Corp.*, 785 F. Supp. 2d 269 (S.D.N.Y. 2011) ........................13

*Gutierrez v. Mount Sinai Health Sys., Inc.*, 188 A.D.3d 418 (1st Dept. 2020)...............6

*Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011) .......................................................12

*HB v. Monroe Woodbury Cent. Sch. Dist.*, No. 11-cv-5881 (CS),
2012 WL 4477552 (S.D.N.Y. Sept. 27, 2012)................................................................9

*Hughes v Twenty-First Century Fox, Inc.*, 304 F. Supp 3d 429 (S.D.N.Y. 2018)...............8, 9, 10

*Khurana v Wahed Invest, LLC*, No. 18-cv-233 (LAK/BCM), 2020 WL 364794
(SDNY Jan. 8, 20200, *r&r adopt.*, No. 18-cv-0233 (LAK), 2020 WL 364022
(SDNY Jan. 22, 2020)......................................................................................................6

*Laurie Marie M. v. Jeffrey T.M.*, 159 A.D.2d 52 (3d Dept. 1991) ...................................6

*Levin v. Sarah Lawrence Coll.*, No. 23-cv-10236 (LJL), 2024 WL 4026966
(S.D.N.Y. Sept. 3, 2024)............................................................................................10, 12

*Lian v. Sedgwick James of N.Y., Inc.*, 992 F. Supp. 644 (S.D.N.Y. 1998) ......................7

*Lucente v. Cnty. of Suffolk*, 980 F.3d 284 (2d Cir. 2020) .................................................13

*McPartlan-Hurson v. Westchester Cmty. Coll.*, 804 F. App'x 41 (2d Cir. 2020) ...............12

*Ming v. Brouillete*, No. 6:23-cv-0086 (MAD/ML), 2023 WL 5779558
(N.D.N.Y. Apr. 7, 2023), *r&r adopt.*, No. 6:23-cv-0086 (MAD/ML),
2023 WL 5444485 (N.D.N.Y. Aug. 24, 2023) ...........................................................4, 5

*Ngono v. Owono*, No. 21-cv-00095 (PGG/SN), 2022 WL 18959568
(S.D.N.Y. Aug. 22, 2022), *r&r adopt. in part*, No. 21-cv-95 (PGG/SN),
2023 WL 2207587 (S.D.N.Y. Feb. 24, 2023), *aff'd*, No. 23-339,
2024 WL 911797 (2d Cir. Mar. 4, 2024)......................................................................11

*Ong v. Park Manor*, 51 F. Supp. 3d 319 (S.D.N.Y. 2014) ..............................................4

**Cases**                                                                                          **Page(s)**

*Patterson v. Patterson*,
No. 1:16-cv-00844 (EAW), 2019 WL 1284346 (W.D.N.Y. Mar. 20, 2019) ............................5, 6

*Peek v. Duanesburg Cent. Sch. Dist.*,
No. 1:23-cv-00388 (AMN/ML), 2023 WL 8255014 (N.D.N.Y. Nov. 29, 2023)...........................4

*Phillips v. Generations Fam. Health Ctr.*, 723 F.3d 144 (2d Cir. 2013) ................................11, 12

*Pinaud v. Cnty. of Suffolk*, 52 F.3d 1139 (2d Cir. 1995) ........................................................14, 15

*Sesto v Slaine*, 171 F. Supp 3d 194 (S.D.N.Y. 2016) ....................................................................7

*Singleton v. City of New York*, 632 F.2d 185 (2d Cir. 1980),
*cert. denied*, 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981) ......................................14, 15

*Trinidad v. N.Y.C. Dep't of Corr.*, 423 F. Supp. 2d 151 (S.D.N.Y. 2006) ..................................13

*United States v. Morrison*, 529 U.S. 598 (2000) ...........................................................................8

*Wallace v. Kato*, 549 U.S. 384 (2007) .........................................................................................12

*Watson v. United States*, 865 F.3d 123 (2d Cir. 2017) ................................................................12

*Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74 (2d Cir. 2003) .........................................12

**Statutes**

18 U.S.C. § 1591 ........................................................................1, 10, 11, 12, 13, 14, 15

New York Penal Law § 130 ........................................................................................4, 5, 6

New York Penal Law § 130.20 ......................................................................................5, 6

New York Penal Law § 130.25 ......................................................................................5, 6

New York Penal Law § 130.52 ......................................................................................4, 5

New York Penal Law § 130.55 ......................................................................................5, 6

New York Penal Law § 130.60 .........................................................................................5

New York Penal Law § 130.62 .........................................................................................5

**Statutes**                                                                                      **Page(s)**

New York Penal Law § 130.65 ....................................................................................4

New York Civil Practice Law and Rules § 213-c ...................................................4, 5

**Rules**

Fed. R. Civ. P. Rule 12(b)(6) ....................................................................................7

Fed. R. Civ. P. Rule 12(f) .........................................................................................6

Fed. R. Civ. P. Rule 12(f)(1) ....................................................................................7

**Other Authorities**

New York City Administrative Code § 10-1101 ....................................................1, 8

New York City Administrative Code § 10-1102 .......................................................8

New York City Administrative Code § 10-1104 .......................................................8

## PRELIMINARY STATEMENT

The Amended Complaint is rife with inflammatory language, speculative assertions based on information and belief, and an unfounded attempt to link former Abercrombie & Fitch Co. CEO, Michael S. Jeffries, to alleged criminal activities. The Plaintiff, David Bradberry, is a porn star, former model, and aspiring reality TV star, who filed this lawsuit as an orchestrated press release designed to inflict as much reputational damages on the Defendants as possible.

At the core of Plaintiff's claims is that Mr. Jeffries engaged in unwanted physical contact with Bradberry. Based on this premise, Plaintiff brings seven claims against Mr. Jeffries, which are generally categorized as: (1) claims pursuant to the Justice for Victims of Trafficking Act of 2015, 18 U.S.C. § 1591 (the "TVPRA"), including unfounded claims of orchestrating a conspiracy and profiteering from a trafficking ring; (2) a claim under the New York City Administrative Code § 10-1101, based on unfounded gender animus; (3) various alleged violations of New York criminal statutes; and (4) one count sounding in New York common law tort.

Mr. Jeffries vehemently denies every allegation made against him in the Amended Complaint. But, even assuming the truth of the allegations—as the Court must do at this pleading stage—the Amended Complaint fails to state a cognizable claim against Mr. Jeffries. The Amended Complaint pleads multiple causes of action that are time-barred, brings counts that are not recognized or actionable claims, and it otherwise fails to state a claim against Mr. Jeffries.

In seeking dismissal of this action, Mr. Jeffries asks the Court to look beyond the sensationalized narrative presented by the Plaintiff, and to address the glaring legal deficiencies in the Amended Complaint, which necessitate the dismissal of this action.

## ALLEGATIONS OF THE AMENDED COMPLAINT

A.    The Defendants, Abercrombie and Mr. Jeffries

Abercrombie & Fitch Co. ("Abercrombie") is a well-known clothing retailer with a history dating back to the nineteenth century. Amended Complaint ("Am. Compl.") ¶ 39. The company suffered a period of financial uncertainty, declared bankruptcy in the 1970s, and was acquired out of bankruptcy when "Leslie Wexner, the founder of The Limited, bought Abercrombie" in 1988 for "$47 million" *Id.* ¶¶ 40-41. "In 1992, Leslie Wexner hired Jeffries to act as the CEO of Abercrombie." *Id.* ¶ 42. "In 1996, Abercrombie became a publicly traded company." *Id.* ¶ 44. And "[f]rom 1996 until mid-2008, Abercrombie performed exceedingly well with steady growth in earnings and share price." *Id.* ¶ 45.

When Wexner hired Jeffries as CEO, "Wexner put full faith into Jeffries to aid him in transforming the clothing brand into a brand aimed at teens." Am. Compl. ¶ 42. Plaintiff claims that near instantaneously upon Mr. Jeffries assuming the role of CEO "the Abercrombie sex-trafficking venture originated and was refined over the years." *Id.* Despite alleging that the Abercrombie sex-trafficking venture originated in 1992, Plaintiff does not plead any alleged trafficking occurring before 2010. Plaintiff does claim, however, that Mr. Jeffries was near-omnipotent in his powers and ability to control everyone and everything around him. For example, Plaintiff claims that once in Mr. Jeffries' "clutches, [the model] knew that he must be completely compliant with every demand Jeffries had for him; otherwise, he would suffer serious reputational, financial, and psychological harm." *Id.* ¶ 38.

"On December 31, 2008, Jeffries' employment agreement [with Abercrombie] was set to expire," but "days before, it was renewed and extended until February 22, 2014." Am. Compl. ¶ 59. And, on "December 9, 2014, Jeffries stepped down as the CEO of Abercrombie." *Id.* ¶ 159.

B.    The Plaintiff, Bradberry

In or around 2010, Plaintiff alleges he was as a male model and was contacted by "a man named Gilbert Bell who presented himself as a manager and agent for young stars." Am. Compl. ¶ 201.  Mr. Bell allegedly promised to introduce Plaintiff "to the owner of Abercrombie."  *Id.* ¶ 202.  Plaintiff then purportedly met with a "an independent model scout for Abercrombie who would evaluate whether he was a fit and who reported directly to the top executives at Abercrombie."  *Id*. ¶ 204.  Plaintiff alleges that the scout "made it clear to David Bradberry that he held the key to the next level in the Abercrombie process and that unless he let the scout perform oral sex on him, Bradberry would not be meeting with Abercrombie or its CEO, Michael Jeffries."  *Id.* ¶ 210.  Plaintiff agreed and accepted money in exchange when, "the scout gave him cash as compensation for his time."  *Id.* ¶ 212.

After allegedly being sexually assaulted by the scout, Plaintiff then went on two voluntary trips to "Washington D.C. and London" "in or around Spring 2010," where Plaintiff claims he was then "forced to engage in commercial sex acts with Jeffries and his associates."  Am. Compl. ¶ 214.  Despite purportedly being assaulted in his first three encounters with Abercrombie personnel, Plaintiff alleges that he thereafter sought out Mr. Jeffries and voluntarily met with him on four other occasions, including alleged meetings in the Hamptons, New York, *id.* ¶ 217, Nice, France, *id.* ¶ 242, New York City, New York, *id.* ¶ 243, and London, U.K., *id.* ¶ 246.

Furthermore, despite being aware of lawsuits filed in 2018 against Abercrombie photographer Bruce Weber—asserting similar allegations concerning male Abercrombie models, *see* Am. Compl. ¶ 46—Plaintiff waited until October 2023 to file this lawsuit.  Plaintiff provides no justification for the delay in bringing these claims.  As shown below, Plaintiff's claims are time-barred, meritless, and fail to state a claim.  The Amended Complaint should therefore be dismissed.

## ARGUMENT

**A.    "Count IX: Battery/Violation of Section 130" Either (1) Should Be Dismissed as it Pleads a Non-existent Claim for Which Relief Cannot be Granted, or (2) Should Be Stricken as it Pleads Immaterial, Impertinent, or Scandalous Matters.**

1.    Count IX Should Be Dismissed as it Pleads a Non-existent Claim for Which Relief Cannot be Granted.

"Courts within this Circuit have [ ] held consistently that criminal charges under New York law 'cannot be prosecuted by a private person.'" *Christian v. Town of Riga*, 649 F. Supp. 2d 84, 91 (W.D.N.Y. 2009). Plaintiff pleads Count IX as a novel "Batter/Violation of Section 130" hybrid cause of action that is not recognized in the law. To the extent that Count IX brings a cause of action under Section 130 of the New York Penal Code ("Section 130"), dismissal is required. *See Ong v. Park Manor*, 51 F. Supp. 3d 319, 348 n.19 (S.D.N.Y. 2014) (holding that a provision of N.Y. Penal Law "cannot form the basis of a civil claim"). Courts in this Circuit have routinely dismissed civil causes of action brought pursuant to Section 130.[1]

Recently, the court in *Doe v. Olive Leaves* considered this issue and dismissed the plaintiff's Section 130 claims. 2024 WL 3048373 (E.D.N.Y. Feb. 16, 2024). The court noted that the "complaint includes a cause of action for violations of New York Penal Law sections 130.52 and 130.65, which establish *criminal* liability for forcible touching and sexual abuse, respectively." *Olive Leaves*, 2024 WL 3048373, at *11 (emphasis original). Like the plaintiff, herein, the court noted that "[p]laintiff seems to base her theory of a private right of action under the Penal Law in the Civil Practice Law and Rules section related to statutes of limitation." *Id.* (citing N.Y. C.P.L.R. § 213-c). However, the court found that there was no support for "this state rule of civil procedure

---

[1]    *See, e.g.*, *Peek v. Duanesburg Cent. Sch. Dist.*, No. 1:23-cv-00388 (AMN/ML), 2023 WL 8255014, at *5 (N.D.N.Y. Nov. 29, 2023) (dismissing Section 130 claim); *Ming v. Brouillete*, No. 6:23-cv-0086 (MAD/ML), 2023 WL 5779558, at *3 (N.D.N.Y. Apr. 7, 2023), *r&r adopt.*, No. 6:23-cv-0086 (MAD/ML), 2023 WL 5444485 (N.D.N.Y. Aug. 24, 2023) (same); *Doe v. Olive Leaves, Inc.*, No. 18-cv-5734 (HG/TAM), 2024 WL 3048373 (E.D.N.Y. Feb. 16, 2024) (same).

giv[ing] her a private right of action to enforce New York's criminal laws in direct contradiction with the well-established principle that 'there is no private right of action to enforce state or federal criminal statutes.'" *Id.* (citing *Ming v. Brouillete*, No. 23-cv-86 (MAD/ML), 2023 WL 5779558, at *3 (N.D.N.Y. Apr. 7, 2023)).

Similarly, in *Patterson v. Patterson*, No. 1:16-cv-00844 (EAW), 2019 WL 1284346 (W.D.N.Y. Mar. 20, 2019), the plaintiff pled "Defendants violated New York Penal Law §§ 130.20(1), 130.25(1), 130.55, and 130.60." *Id.* at *7. The court dismissed the plaintiff's claims and held that "Plaintiff does not have a private right to bring claims pursuant to [those sections of] New York Penal Law." *Id.* While the Civil Practice Law and Rules § 213-c ("Section 213-c") provides a "a civil cause of action for victims who have suffered from the acts defined under various sections of New York Penal Law Article 130," *id.*, Section 213-c does not authorize private citizens to enforce those New York Penal laws.

Furthermore, Section 213-c does not provide for civil claims for Section 130.20, 130.52, or 130.62—all of which are pled as violations in the Plaintiff's Amended Complaint. *Compare* Am. Compl. ¶¶ 480(a), (d), (e), *with* Section 213-c.[2] Relevant here, the *Patterson* court went on to find:

> Moreover, the state civil statutes that specifically reference the provisions invoked by Plaintiff either discuss legal consequences that stem from a conviction under those sections of the New York Penal Law or use them to articulate term definitions. *See, e.g.*, Dom. Rel. §§ 170, 200 (citing behaviors defined in N.Y. Penal § 130.20 as a cause for filing an action for separation or divorce); Veh. & Traff. § 509-cc (listing N.Y. Penal §§ 130.20, 130.25, and 130.55 as offenses that disqualify a person from being a school bus driver); . . .

---

[2] *See also Doe v. Doe*, 83 Misc. 3d 1282(A), 216 N.Y.S.3d 896, at *3 (N.Y. Sup. Ct. 2024) ("[O]f the nine alleged violations of Penal Law § 130, only two of the allegedly violated sections are listed in CPLR § 213-c: Penal Law § 130.50 and Penal Law § 130.40. . . . [T]he remaining causes of action in this Counterclaim based on violations of Penal Law Article 130 are hereby DISMISSED."); *Patterson*, 2019 WL 1284346, at *7 (dismissing claims pursuant to 130.20(1), 130.25(1), 130.55, and 130.60, because "the legislature did not intend for there to be a private right to pursue the remaining provisions, including those invoked by Plaintiff").

*Patterson*, 2019 WL 1284346, at *7; *see also Gutierrez v. Mount Sinai Health Sys., Inc.*, 188 A.D.3d 418, 134 (1st Dept. 2020) ("CPLR 213–c, however, extends the time of a statute of limitations; it does not create a cause of action where none otherwise exists."). In *Patterson*, the court held "that a private right of action for Plaintiff's New York Penal Law claims would not be consistent with New York's legislative scheme, and grant[ed] Defendants' motion to dismiss them." *Id.* The same result is required here.

Plaintiff's claims pursuant to Section 130 should be dismissed, as the statutes do not permit civil plaintiffs to bring Section 130 causes of action.

2.    In the Alternative, the Allegations of Count IX Should Be Stricken as Immaterial, Impertinent, or Scandalous.

To the extent Plaintiff argues that Count X sounds only in the common law tort of battery, and not pursuant to Section 130, then the alleged violations of Section 130 are immaterial, impertinent, and scandalous allegations which should be stricken pursuant to Rule 12(f). "The elements of a battery claim are offensive bodily contact made with the intent to make contact." *Goff v. Clarke*, No. 98-2101, 2002 WL 126276, at *2 (N.Y. Sup. Ct. Jan. 22, 2002), *aff'd as modified*, 302 A.D.2d 725, (3d Dept. 2003) (citing *Laurie Marie M. v. Jeffrey T.M.*, 159 A.D.2d 52, 55 (3d Dept. 1991)).

Section 130 and its elements are immaterial and impertinent to Plaintiff's battery tort claim and are wanting for dismissal. *See, e.g.*, *Khurana v Wahed Invest, LLC*, No. 18-cv-233 (LAK/BCM), 2020 WL 364794, at *1 n.1 (SDNY Jan. 8, 2020), *r&r adopt.*, No. 18-cv-0233 (LAK), 2020 WL 364022 (SDNY Jan. 22, 2020) (holding the paragraph that "reprints N.Y. Penal Code § 135.6 [sic], which is not relevant to any claim asserted in the SAC and should therefore be stricken in accordance with Fed. R. Civ. P. 12(f)(1)"). Plaintiff pleads the penal statute to inject immaterial and scandalous criminal allegations into a civil tort claim. Accordingly, if the Court

does not dismiss Count IX pursuant to Rule 12(b)(6), then the references and allegations tracking the language and alleging violations of Section 130 should be stricken pursuant to Rule 12(f)(1).

**B.  Count X: Intentional Infliction of Emotional Distress ("IIED") Should Be Dismissed as it Is Duplicative of Plaintiff's Intentional Tort Claims.**

The IIED claim is a "highly disfavored cause of action" which is "almost never successful," and is "routinely dismissed on pre-answer motion." *Sesto v Slaine*, 171 F. Supp 3d 194, 201-02 (S.D.N.Y. 2016) (quotations omitted). Among the numerous reasons IIED claims often fail, "state courts and federal district courts applying New York law have consistently held that the tort of intentional infliction of emotional distress may not be used as a substitute for an available traditional tort theory," *Brewton v. City of New York*, 550 F. Supp. 2d 355, 370 (E.D.N.Y. 2008), and courts routinely conclude that "IIED claims that are duplicative of other tort claims should therefore be dismissed," *Crews v. Cty. of Nassau*, 996 F. Supp. 2d 186, 214 (E.D.N.Y. 2014) (citing *Lian v. Sedgwick James of N.Y., Inc.*, 992 F. Supp. 644, 651 (S.D.N.Y. 1998)). Plaintiff's IIED claim is an improper "substitute for an available traditional tort theory," *Brewton*, 550 F. Supp. 2d at 370, and "duplicate of other tort claims [and] should therefore be dismissed," *Crews*, 996 F. Supp. 2d at 214.

"[P]ersuaded by the general consensus among courts in this district," the court in *Centeno v. City of New York* dismissed an IIED claim that was "predicated on the very same conduct underlying a plaintiff's other tort claims," No. 16-cv-2393 (VSB), 2019 WL 1382093, at *10 (S.D.N.Y. Mar. 27, 2019) (collecting cases). Here, the six other counts alleged against Mr. Jeffries are predicated on the "very same conduct underlying" the Plaintiff's IIED claim, and therefore "Plaintiff's IIED claim must be dismissed as duplicative." *Id.*

**C.    Count XI: Administrative Code § 10-1101—*et. seq.* Should Be Dismissed for Failure to Plead the Required Gender Motivation or Gender Animus.**

Plaintiff fails to plead a required element of the Administrative Code § 10-1101—*et. seq.* (the "GVMA" or "VGM") claim and Count XI should therefore be dismissed.  The GVMA "was passed by the City Council specifically in response to the United States Supreme Court's decision in *United States v. Morrison*, 529 U.S. 598, [ ] (2000), which struck down the federal civil rights remedy for gender-motivated crimes contained in the federal Violence Against Women Act (VAWA) as an unconstitutional exercise of Congressional power." *Engelman v Rofe*, 194 A.D.3d 26, 30 (1st Dept. 2021).  "Shortly after the VAWA civil rights remedy was struck down, the City Council passed the VGM to fill the 'void' left by the Supreme Court's decision." *Id.* at 31 (citing Admin. Code § 10–1102).

The GVMA created a claim based on "injur[y] by an individual who commit[ted] a crime of violence motivated by gender."  Admin. Code § 10-1104.  The code defines "crime of violence motivated by gender" as a "crime of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender." *Id.*  To state a claim under the GVMA, the Plaintiff must allege that: "(1) the alleged act constitutes a misdemeanor or felony against the plaintiff; (2) presenting a serious risk of physical injury; (3) that was perpetrated because of plaintiff's gender; (4) in part because of animus against plaintiff's gender; and (4) [sic] resulted in injury." *Hughes v Twenty-First Century Fox, Inc.*, 304 F. Supp 3d 429, 455 (S.D.N.Y. 2018).  In Count XI, Plaintiff only recites the language of the GVMA and fails to plead facts that support the copied language of the Administrative Code.  *See* Am. Compl. ¶¶ 499-502.  The Amended Complaint does not allege that Mr. Jeffries' conduct was "perpetrated because of plaintiff's gender" or "because of animus against [men]." *C.f. Hughes*, 304 F. Supp 3d at 455.

Courts have dismissed GVMA claims where the "the Complaint is devoid of facts demonstrating that [defendant]'s actions were also motivated, in part, by 'feelings of animosity

and malevolent ill will' against women"—or in this instance, against men. *Id.* In *Hughes*, for example, the plaintiff alleged to have been raped, but the court dismissed the plaintiff's GVMA claim because there were no "specific allegations that [the defendant] harbored or expressed any animosity toward women." *Id.* The *Hughes* court found that "[i]n spite of the egregious nature of the allegations, courts have dismissed GMVA claims based on the plaintiff's failure to state 'any facts showing that [defendant's] alleged acts demonstrated any hostility based on gender.'" *Id.* (citing *Cordero v. Epstein*, 22 Misc. 3d 161, 163, 869 N.Y.S.2d 725 (N.Y. Sup. Ct. 2008) (defendant touched plaintiff's private parts and coerced oral sex)) (collecting cases).

To plead a GVMA claim, Plaintiff must allege more than sexual misconduct, and must plead specific facts demonstrating Mr. Jeffries' animosity toward men. *See, e.g.*, *Garcia v. Comprehensive Ctr., LLC*, No. No. 17-cv-8970 (JPO), 2018 WL 3918180, at *5, (S.D.N.Y. Aug. 16, 2018) (supervisor's assault, misogynistic insults, and intimations that the plaintiff would be treated better if she provided sexual services, insufficient under VGM because these allegations do not allege "feelings of animosity and malevolent ill will" against women) (quotations omitted); *Gottwald v. Sebert*, 2016 N.Y. Slip Op. 32815(U), 2016 WL 1365969, at *21 (Sup. Ct., N.Y. County 2016) (complaint did not allege that defendant harbored animus toward women when he raped and behaved violently toward the plaintiff because not every rape is "a gender-motivated hate crime" under VGM); *HB v. Monroe Woodbury Cent. Sch. Dist.*, No. 11-cv-5881 (CS), 2012 WL 4477552, at *17 (S.D.N.Y. Sept. 27, 2012) ("[T]he use of gendered or sexually loaded insults such as 'bitch,' 'whore,' 'prude,' and 'slut' can certainly be indicative of animus on the basis of sex."); *E.E.O.C. v. A. Sam & Sons Prod. Co., Inc.*, 872 F. Supp. 29, 35 (W.D.N.Y. 1994) ("The term 'whore' is usually gender-specific and is certainly more offensive when directed at a woman. Thus the inference is sufficiently strong that [the] conduct was directed at [plaintiff] because she was a woman."). Here, Plaintiff's allegations draw nowhere near to establishing that Mr. Jeffries

was motivated, even in part, by animosity against men or that the alleged conducted was perpetrated because of plaintiff's gender—without which, Plaintiff's GVMA claim must fail.

Importantly, no reported case could be found following exhaustive research where the allegation of the rape of one <u>man</u>, by another <u>man</u>, caused the court to infer that the defendant harbored animosity toward <u>men</u>—and thereby satisfied the pleading requirements of the GVMA. To permit the Plaintiff's GVMA claim to survive here would erase any distinction between a sexual battery claim and a GVMA claim. Stated differently, if Plaintiff's GVMA claim is not dismissed, then all sexual batteries by one person (regardless of gender) against any other person (regardless of gender) are necessarily gender motivated crimes. This absurd result cannot stand. Here, Plaintiff's failure to plead "specific allegations that [the defendant] harbored or expressed any animosity toward  []men," or that the alleged act was "perpetrated because of plaintiff's gender," is fatal to his GVMA claim. *Hughes*, 304 F. Supp 3d at 455. Count XI should be dismissed.

**D.    The TVPRA Related Counts XII - XV are Barred by the 10-year Statute of Limitations.**

       1.    <u>The 10-year Statute of Limitations Ran Years Before Plaintiff Filed this Lawsuit.</u>

The statute of limitations for claims under the TVPRA is ten years after the cause of action arises. 18 U.S.C. § 1595(c)(1). Courts have determined that the Adult Survivors Act <u>does not</u> extend the statute of limitations for TVPRA claims. *See, e.g.*, *Levin v. Sarah Lawrence Coll*., No. 23-cv-10236 (LJL), 2024 WL 4026966, at *16 (S.D.N.Y. Sept. 3, 2024) ("Plaintiffs' argument that the TVPRA claim is revived under the ASA is without merit. The ASA—as a state statute— cannot revive claims that are time-barred under a federal statute.").

Having filed the original complaint on October 27, 2023, the alleged conduct forming Plaintiff's TVPRA claim must have occurred on or after October 27, 2013, to be timely. *See, e.g.*, *Ardolf v. Weber*, No. 18-cv-12112 (GBD/SN), 2020 WL 5209525, at *3 (S.D.N.Y. Sept. 1, 2020)

(dismissing plaintiff's TVPRA claims based on statute of limitations when plaintiff "commenced this action on December 21, 2018, [therefore] his claim is limited to conduct that occurred on or after December 21, 2008, and the claim must be dismissed if it is based on earlier conduct").

Here, Plaintiff alleges being trafficked only in 2010—three years prior to the cut-off date. *See, e.g.*, Am. Compl. ¶ 214 ("[I]n or around Spring 2010, Bradberry was transported to Washington D.C. and London . . . ."); *id.* ¶ 217 ("In or around May 2010, . . . he was selected to attend a casting event in . . . the Hamptons . . . ."). Bradberry even describes his alleged trafficking as having occurred "at a specific time period (2010)." ¶ 403 (alleging "specific victims (e.g., David Bradberry) of a specific trafficker (Jeffries) at a specific time period (2010)"). Having only alleged trafficking in 2010, Plaintiff's TVPRA claims are barred by the ten-year statute of limitation on the face of the Amended Complaint.

2.    Equitable Tolling Does Not Salvage Plaintiff's Untimely TVPRA claims.

While courts recognize rare and exceptional instances of equitable tolling of TVPRA claims, Plaintiff pled no such extraordinary circumstances here. *See Ngono*, 2022 WL 18959568, at *3 ("Plaintiff has pleaded no circumstances, extraordinary or otherwise, that would have prevented him from timely filing his claim. Therefore, Plaintiff's federal labor and sex trafficking claims are time-barred by the TVPA's statute of limitations.").[3] No extraordinary circumstances exist which warrant the equitable tolling of Plaintiff's TVPRA claims; certainly, none have been pled and the TVPRA claims should be dismissed as time-barred.

"To qualify for equitable tolling, the plaintiff must establish that extraordinary circumstances prevented him from filing his claim on time, and that he acted with reasonable diligence throughout the period he seeks to toll." *Phillips v. Generations Fam. Health Ctr*., 723

---

[3]    Full citation: *Ngono v. Owono*, No. 21-cv-00095 (PGG/SN), 2022 WL 18959568, at *3 (S.D.N.Y. Aug. 22, 2022), *r&r adopt. in part*, No. 21-cv-95 (PGG/SN), 2023 WL 2207587 (S.D.N.Y. Feb. 24, 2023), *aff'd*, No. 23-339, 2024 WL 911797 (2d Cir. Mar. 4, 2024).

F.3d 144, 150 (2d Cir. 2013) (cleaned up). "The term 'extraordinary' refers not to the uniqueness of a party's circumstances, but rather to the severity of the obstacle impeding compliance with a limitations period." *Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011).

"Equitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs." *Watson v. United States,* 865 F.3d 123, 133 (2d Cir. 2017) (quoting *Wallace v. Kato*, 549 U.S. 384, 396 (2007)); *see also McPartlan-Hurson v. Westchester Cmty. Coll.*, 804 F. App'x 41, 43–44 (2d Cir. 2020) (explaining that equitable tolling of exhaustion time may apply, but only "in rare and exceptional circumstances, in which a party is prevented in some extraordinary way from exercising his rights" (quoting *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003))).

For example, courts have found "death threats," "fear of retaliation," and "fear of harm to a plaintiff's career <u>cannot</u> justify equitably estopping a defendant from asserting a time limitation period." *See Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 173 (S.D.N.Y. 2019) (emphasis supplied; collecting cases quoted). Plaintiff failed to plead facts which approach the rejected arguments in *Geiss, supra,* let alone facts supporting the required "extraordinary circumstances," *Phillips*, 723 F.3d at 150.

Recently, the *Levin* court rejected an equitable tolling argument to extend a time-limited TVPRA claim, where the plaintiffs alleged that defendants "tortured, manipulated, and brainwashed the plaintiffs so horrifically that they were unable to escape let alone seek help or pursue redress," and further that "the plaintiffs had no access to legal advice, no significant freedom of movement[.]" 2024 WL 4026966, at *17. In dismissing the TVPRA claims, the *Levin* court found that "the Complaint does not sufficiently plead that extraordinary circumstances stood in [plaintiff's] way and prevented timely filing." *Id*.; *see also Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000) (the "burden of demonstrating the appropriateness of equitable tolling . . . lies with

the plaintiff, . . . [a] conclusory and vague claim, without a particularized description of how her condition adversely affected her capacity to function generally or in relationship to the pursuit of her rights, is manifestly insufficient to justify any further inquiry into tolling.").

Similarly, Plaintiff does not describe any extraordinary circumstances that stood in his way between 2010 and when he filed in 2023, the efforts he made to file prior to 2023, or any other due diligence undertaken to timely file the claim.  Accordingly, there is no basis for the Court to permit the equitable tolling of Plaintiff's claims in this instance, and therefore his TVPRA claims are time-barred.

3.    The Continuing Violation Doctrine Does Not Revive Plaintiff's Untimely TVPRA Claims.

To the extent Plaintiff argues that "continuing violations" toll the limitations period, this argument also fails.  The Amended Complaint alleges that Mr. Jeffries role as CEO of Abercrombie ended December 9, 2014.  Am. Compl. ¶ 159.  For the continuing violation doctrine to apply, the Complaint must allege relevant violative acts occurring after October 27, 2013 (but, before Mr. Jeffries retired on December 9, 2014).  The Amended Complaint contains no such allegation after October 27, 2013; so, there is no basis to revive Plaintiff's expired claims.

Under the continuing violation doctrine, a court can allow recovery for violations outside the applicable limitations period if those violations are so closely related to violations within the limitations period that they can all be regarded as a single continuing violation.  *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 309 (2d Cir. 2020).  "Where, by contrast, plaintiffs complain of 'discrete acts' separated in time, the usual limitations rule applies."  *Desuze v. Ammon*, 990 F.3d 264, 271 (2d Cir. 2021) (quoting *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015)).  Notably, "courts in the Second Circuit 'have been loath to apply [the continuing violation doctrine] absent a showing of compelling circumstances.'"  *Grimes v. Fremont Gen. Corp.*, 785 F. Supp. 2d 269, 292 (S.D.N.Y. 2011) (alteration in original) (quoting *Trinidad v. N.Y.C. Dep't of Corr.*, 423 F. Supp.

13

2d 151, 165 n.11 (S.D.N.Y. 2006)); *see also Adams v. Smith*, No. 8:07-cv-0452 (LEK/RFT), 2015 WL 4139686, at *7 (N.D.N.Y. July 9, 2015) (quoting *Blankman v. Cnty. of Nassau*, 819 F. Supp. 198, 207 (E.D.N.Y. 1993)) ("Second Circuit courts 'consistently have looked unfavorably on continuing violation arguments . . . and have applied the theory only under compelling circumstances.'").

Furthermore, any allegations to support continuing violation doctrine must be specific. *See Abdullajeva v. Club Quarters, Inc.*, No. 96-cv-0383 (LMM), 1996 WL 497029, at *7 (S.D.N.Y. Sept. 3, 1996) (granting motion to dismiss over continuing violation argument when "Plaintiffs have given the Court no specific details as to tortious acts committed after January 10, 1995"). Here, Plaintiff has not pled any facts of wrongdoing after October 27, 2013, and certainly nothing with the specificity required for the extraordinary application of the continuing violation doctrine.

Importantly, Plaintiff's bare, conclusory allegations that "the conspiracy continued until recently,' Am. Compl. ¶ 19, does indefinitely extend the TVPRA's statute of limitations. *See also* Am. Compl. ¶ 294 (alleging that the "conspiracy and venture undertook criminal actions in violation of the TVPA throughout those years, including 2014 and after."). In a pair of cases, *Pinaud* and *Singleton*, the Second Circuit foreclosed the possibility that general allegations of an ongoing conspiracy could indefinitely extend the statute of limitations on a claim. *See Pinaud v. Cnty. of Suffolk*, 52 F.3d 1139 (2d Cir. 1995); *Singleton v. City of New York*, 632 F.2d 185 (2d Cir. 1980). In *Pinaud* the court held:

> Even assuming that [plaintiff]'s claims involve more than "conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive [him] of his constitutional rights" of the sort that we generally reject outright, *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993), the argument that his assertion of a conspiracy should serve to delay the time when his causes of action accrue is foreclosed by this Court's decision in *Singleton v. City of New York*, 632 F.2d 185 (2d Cir. 1980), *cert. denied*, 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981).
>
> . . . .

14

> [The *Singleton*] holding necessarily thwarts [plaintiff]'s attempt to utilize conspiracy allegations to postpone the accrual of his claims based on acts occurring prior to June 1988. *See also Eagleston*, 41 F.3d at 871. In saying this, we emphasize that our holding in *Singleton* is not a Catch–22 holding: it does not require a plaintiff to bring a claim of which he or she neither knows nor ought to know. It simply says that **when a plaintiff knows or ought to know of a wrong, the statute of limitations on that claim starts to run, and the later awareness that the actionable wrong was also part of a conspiracy does not expand the statutory time limit.**

*Pinaud*, 52 F.3d at 1156–57 (emphasis supplied). The same result is mandated here.

First, Plaintiff's allegations that the trafficking venture and conspiracy continued after Plaintiff claims he was trafficked in 2010 are mere "conclusory, vague, or general allegations that the defendants have engaged in a conspiracy," which the Second Circuit "generally reject[s] outright[.]" *Id.* at 1156. Second, even if Plaintiff pled any alleged wrongs occurring after October 27, 2013—that were also part of the alleged conspiracy—such allegations would not expand the statutory time limit pursuant to the *Pinaud* and *Singleton* precedents. *Id.* Third, even if Plaintiff alleged more than conclusory, vague allegations of wrongdoing, they would be "'discrete acts' separated in time," and "the usual limitations rule" would apply. *Desuze*, 990 F.3d at 271.

In any event, there are no compelling circumstances that warrant the Court applying the continuing violation doctrine to resuscitate Plaintiff's stale claims. Plaintiff's TVPRA related claims began to run in 2010, and they have long since been barred by the statute of limitations. Counts XII through XV are all time barred and should be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, the Amended Complaint should be dismissed as against Defendant Michael Jeffries.

Dated:  October 4, 2024

Respectfully submitted,

**NELSON MULLINS**
**RILEY & SCARBOROUGH**
***Counsel for Defendant Michael S. Jeffries***

*/s/ Ryan K. Todd*
Mark F. Raymond (*pro hac vice*)
Ryan K. Todd (*pro hac vice*)
One Biscayne Tower, 21st Floor
Miami, FL 33131
Telephone: 305.373.9400
mark.raymond@nelsonmullins.com
ryan.todd@nelsonmullins.com

Mitchell Boyarsky
330 Madison Avenue, 27th Floor
New York Bar No. 2667780
New York, NY 10017
Telephone: 212-413-9000
mitch.boyarsky@nelsonmullins.com