UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| David Bradberry individually and On behalf of all others similarly situated, | |
| Plaintiff, | Case No.  1:23-cv-09440-JHR |
| v. | |
| Abercrombie & Fitch Co., Michael S. Jeffries, Matthew Smith, and The Jeffries Family Office, LLC, | |
| Defendants. | |

**PLAINTIFF DAVID BRADBERRY'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT, MICHAEL S. JEFFRIES'S MOTION TO DISMISS**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................... 1

FACTUAL OVERVIEW ................................................................................... 2

ARGUMENT ............................................................................................... 3

   I.    BRADBERRY HAS PROPERLY PLED HIS TORT CLAIMS (COUNTS IX-X)........... 3

      A.   The Complaint States a Claim Under N.Y. CPLR 214-j and Contains Allegations Directly Relevant to the Claim. ........................................................................ 4

      B.   Count X Is Not Duplicative of Plaintiff's Intentional Tort Claim. ................................ 8

   II.    PLAINTIFF HAS ADEQUATELY PLED THE REQUIRED GENDER MOTIVATION OR GENDER ANIMUS PURSUANT TO ADMINISTRATIVE CODE § 10-1101—et seq. 10

   III.   BRADBERRY'S TVPA RELATED COUNTS (XIII-XVI) ARE NOT BARRED BY THE 10-YEAR STATUTE OF LIMITATIONS. ...................................................... 11

      A.   Bradberry Had Until December 9, 2024, to File his TVPA Claims. ........................... 12

      B.   Bradberry's Claims Are Permitted by the Doctrine of Equitable Tolling. .................. 14

      C.   Bradberry's Claims Are Permitted by the Doctrine of Equitable Estoppel. ................ 15

CONCLUSION................................................................................................ 17

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abbas v. Dixon*,
  480 F.3d 636, 642 (2d Cir. 2007)........................................................................................ 14

*Bender v. City of New York*,
  78 F.3d 787 (2d Cir. 1996).................................................................................................. 8

*Bensky v. Indyke*,
  24-CV-1204 (AS), 2024 WL 3676819 (Aug. 5, 2024)...................................................... 17

*Bisson v. Martin Luther King Jr. Health Clinic*,
  No. 07-5416-cv, 2008 WL 4951045 (Nov. 20, 2008) ...................................................... 15

*Breest v. Haggis*,
  180 A.D. 3d 83 (N.Y. 1st Dept. 2019) .......................................................................... 10, 11

*Carroll v. Trump*,
  650 F. Supp. 3d 213 (S.D.N.Y. 2023).............................................................................. 4, 5

*Chao v. Xanadu Boutique, Inc.*,
  380 F.Supp.2d 134 (E.D.N.Y. 2005) ................................................................................ 14

*Clark v. Hanley*,
  89 F. 4th 78 (2d Cir. 2023) ................................................................................................ 14

*Cruz v. TD Bank*,
  *N.A.*, 22 N.Y.3d 61 (2013)................................................................................................... 5

*Doe v. Baram*,
  20-civ-9522 (ER), 2021 WL 4847076 (S.N.D.Y. 2021) .................................................. 12

*Geiss v. Weinstein Company Holdings LLC*,
  383 F. Supp. 3d 156 (2019) ............................................................................................... 15

*Giuffre v. Andrew*,
  579 F.Supp.3d 429 (S.D.N.Y. 2022)................................................................................. 8, 9

*Goff v. Clarke*,
  No. 98-2101, 2002 WL 126276 (N.Y. Sup. Ct. Jan. 22, 2002) ........................................ 7

*Guo v. IBM 401(k) Plus Plan*,
  95 F. Supp. 3d 512 (S.D.N.Y. 2015)................................................................................. 14

*Holmes v. Lorch*,
    329 F. Supp 2d 516 (S.D.N.Y. 2004)................................................................... 17

*Howell v. New York Post Co.*,
    81 N.Y.2d 115 (N.Y. 1993) ............................................................................ 8

*Hughes v Twenty-First Century Fox, Inc.*,
    304 F. Supp 3d 429 (S.D.N.Y. 2018)................................................................ 10

*Ion Audio, LLC v. Bed, Bath & Beyond, Inc.*,
    15-CV-8292 (KMW), 2019 WL 1494398 (S.D.N.Y. April 2, 2019). ....................... 17

*Kashef v. BNP Paribas S.A.*,
    925 F. 3d 53 (2d Cir. 2019)............................................................................ 3

*Knipe v. Skinner*,
    999 F. 2d 708 (2d Cir. 1993).......................................................................... 9, 11

*Laurie Marie M. v. Jeffrey T.M.*,
    159 A.D.2d 52 (3d Dept. 1991) ....................................................................... 8

*Levin v. Sarah Lawrence Coll.*,
    23-cv-10236 (LJL), 2024 WL 4026966 (S.D.N.Y. Sept. 3, 2024) .......................... 15

*Mancuso v. Consolidated Edison Co. of New York, Inc.*,
    905 F. Supp. 1251 (S.D.N.Y. 1995).................................................................. 17

*Ortiz v. Cornetta*,
    867 F.2d 146 (2d Cir. 1989)........................................................................... 12

*Patterson v. Patterson*,
    No. 1:16-cv-00844 (EAW), 2019 WL 1284346 (W.D.N.Y. Mar. 20, 2019) ............. 6, 7

*Sheehy v. Big Flats Cmty. Day, Inc.*,
    73 N.Y.2d 629 (1989) ................................................................................... 5

*Thea v. Kleinhandler*,
    807 F.3d 492 (2d Cir. 2015)............................................................................ 16

*United States v. Ben Zvi*,
    242 F.3d 89 (2d Cir. 2001)............................................................................. 12

*United States v. Kissel*,
    218 U.S. 610 (1910)...................................................................................... 13

*United States v. Leslie*,
    658 F.3d 140 (2d Cir. 2011)........................................................................... 14

*Wade Park Land Holdings, LLC v. Kalikow*,
    21-cv-1657 (LJL), 2022 WL 2479110 (S.D.N.Y. July 6, 2022)............................................. 17

*Wagley v. JP Morgan Chase Bank. N.A.*,
    18 Civ. 8668 (PGG), 2020 WL 5768688 (S.D.N.Y. Sept. 26, 2020) ...................................... 15

*Yoo v. Choi*,
    210 A.D.3d 1062, 1064 (2d Dept. 2022) .......................................................................... 8

**Statutes**

18 U.S.C. § 1591 ......................................................................................................................... 1

N.Y. CPLR 213-c .................................................................................................................... 6, 7

N.Y. CPLR 214-g ....................................................................................................................... 6

N.Y. CPLR 214-j ................................................................................................ 1, 3, 4, 5, 6, 7, 8

N.Y. Penal Law § 130.20 ........................................................................................................... 7

N.Y. Penal Law § 130.25 ........................................................................................................... 7

N.Y. Penal Law § 130.50 ........................................................................................................... 7

N.Y. Penal Law § 130.52 ........................................................................................................... 7

N.Y. Penal Law § 130.66 ........................................................................................................... 7

N.Y. Penal Law § 130 ................................................................................................................. 1

**Other Authorities**

New York Bill Jacket,
    2019 S.B. 6574, Ch. 315 ........................................................................................................ 6

New York City Administrative Code § 10-1101 ........................................................................ 1

**Rules**

Fed. R. Civ. P. Rule 12(b)(6) ................................................................................................... 14

Fed. R. Civ. P. Rule 12(f) ........................................................................................................... 7

**Treatises**

WAYNE R. LAFAVE & JENS DAVID OHLIN, CRIMINAL LAW § 12.3 (7th ed. 2023) ....................... 13

Plaintiff, David Bradberry ("Bradberry"), submits this memorandum of law in opposition to Defendant Michael Jeffries's ("Jeffries") Motion to Dismiss. [DE 91].

## PRELIMINARY STATEMENT

Michael Jeffries was the CEO of ANF from 1992 and 2014. During his tenure, Jeffries single-handedly transformed the business from a failing clothing company into a lucrative global brand by enacting a marketing scheme predicated on oversexualizing young men to sell clothes. With Abercrombie's support, Jeffries preyed upon and sexually exploited young male models who had dreams of modeling for the conglomerate. As alleged in Bradberry's Amended Complaint, Jeffries committed a series of crimes and torts against these young men, including but not limited to, violations of Article 130 of the New York Penal Code, the Victims of Gender Motivated Violence Protection Law, New York City Administrative Code § 10-1101 ("GMVA"), and the Trafficking Victim's Protection Act of 2000, 18 U.S.C. § 1591 ("TVPA").

In response, Jeffries claims that: (1) the well-pled allegations of his violations of Article 130 do not give rise to civil liability;[1] (2) Bradberry's Intentional Infliction of Emotional Distress claim is duplicative of the other intentional tort claims; (3) Bradberry failed to plead the required gender motivation or animus pursuant to the GMVA; and (4) Bradberry's TVPA claims are time-barred. Jeffries's arguments willfully ignore the serious, specific, and well-pled allegations in the Amended Complaint, and instead spill ink attacking Bradberry by shamelessly calling him a "porn star, former model, and aspiring reality TV star, who filed this lawsuit as an orchestrated press release." [DE 91] at 1. The reality is that Bradberry is just one of hundreds of men who was sexually trafficked, exploited, and harmed by Jeffries's illegal and reprehensible conduct. The Court should reject Jeffries's efforts to escape liability for his intentional and willful conduct given

---

[1] This position is notably inconsistent with the Adult Survivor's Act pursuant to N.Y. CPLR 214-j.

the well-pled allegations in the Amended Complaint, and it should deny Jeffries's motion in its entirety.

## FACTUAL OVERVIEW

As outlined in Plaintiff's Amended Complaint, between 1992 and 2014, Jeffries served as the CEO of Abercrombie, where he was the key cog in a meticulously run sex-trafficking venture that used the Abercrombie brand to lure young men into a position where he and his co-conspirators could coerce them to engage in commercial sex acts and commit sexual offenses against them. Am. Compl. ¶¶ 50, 65, 67, 118. Jeffries used middlemen for the recruitment and initial interaction with prospective male Abercrombie models. *Id*. ¶¶ 63-65. He had a home office to finance and fund the portions of the "casting" events that were not directly funded by Abercrombie. *Id*. ¶¶ 88-91. And he had Abercrombie to provide a legitimate framework to present these "casting" events as a legitimate company function to unsuspecting victims. *Id*. ¶¶ 118-122.

At the helm of it all was Michael Jeffries, who masterfully assessed the specific needs and vulnerabilities of each of his targeted victims before forcing and coercing them to engage in commercial sex acts and committing sexual offenses against them. *Id*. ¶ 50. Jeffries groomed the young men, indoctrinating them to believe that engaging in sex against their will and without any choice in the decision, was the price they would be required to pay for success, not only in the modeling industry, but at Abercrombie & Fitch *Id*. ¶ 135. Through Jeffries, and other individuals, these Class Members were told that their chances of becoming Abercrombie models were predicated on meeting Jeffries at one of his homes and following his directions once there. *Id*. They were promised the opportunity to model for Abercrombie, so long as they engaged in commercial sex acts with Jeffries and his partner, Matthew Smith. *Id*. ¶ 141.

Over the years, as Abercrombie and in turn Jeffries grew wealthier and more powerful, the

sex-trafficking venture, with near unlimited resources and scrupulous organization, continued to expand. A male recruiter would approach prospective models selling a once-in-a-lifetime chance to meet Jeffries—the man who could make them an Abercrombie model. *Id*. ¶¶ 63-65. Once they were provided with travel arrangements and itineraries and taken to Jeffries for their interviews, they were required to sign a document they were not permitted to read that purportedly bound them to silence. *Id*. ¶¶ 7, 94, 95, 111, 216. They were informed that if they were to ever speak about what occurred with Jeffries, significant legal action would be initiated against them. *Id*. ¶¶ 95-104. Finally, once in Jeffries's home, trapped in a room, and in his clutches, Jeffries would sexually assault each of his victims. *Id*. ¶¶ 186; 234-236.

## ARGUMENT

The Court should deny Defendant Michael Jeffries's Motion to Dismiss Bradberry's claims. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face….A Claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). (internal quotation marks omitted). The Court must "accept[] all factual allegations in the complaint as true and draw[] all reasonable inferences in the plaintiff's favor." *Kashef v. BNP Paribas S.A.*, 925 F. 3d 53, 58 (2d Cir. 2019). Drawing all reasonable inferences in Bradberry's favor, Jeffries has not demonstrated that Bradberry failed to state a claim.

## I.    BRADBERRY HAS PROPERLY PLED HIS TORT CLAIMS (COUNTS IX-X).

Bradberry has properly pled his Claims pursuant to N.Y. CPLR 214-j. The Adult Survivor's Act recognizes a one-year window to bring a claim for an actor's intentional conduct in violating Article 130 of the New York Penal Code. N.Y. CPLR 214-j. Moreover, Plaintiff's

claim for intentional infliction of emotional distress is not duplicative of the battery claim as the facts set forth in Plaintiff's Amended Complaint demonstrate that certain of Bradberry's injuries flow from conduct outside of the sexual crimes perpetrated against him by Jeffries.

**A. The Complaint States a Claim Under N.Y. CPLR 214-j and Contains Allegations Directly Relevant to the Claim.**

The Complaint adequately pleads a cognizable claim for which relief can be granted. Defendant, in its Motion, fails to cite or even recognize the private right of action created under New York Civil Practice Law and Rules § 214-j, otherwise known as the Adult Survivor's Act ("ASA") in its argument. Under the ASA:

> **"[E]very civil claim or cause of action brought against any party alleging intentional or negligent acts or omissions by a person for physical, psychological, or other injury or condition suffered as a result of conduct which would constitute a sexual offense as defined in article one hundred thirty of the penal law committed against such person who was eighteen years of age or older … which is barred as of the effective date of this section because the applicable period of limitation has expired, and/or the plaintiff previously failed to file a notice of claim or notice of intention to file a claim, is hereby revived, and action thereon may be commenced not earlier than six months after, and not later than one year and six months after the effective date of this section."**

N.Y. CPLR 214-j.

To quell any future argument, while the Defendant does not raise the constitutionality of the ASA, the Southern District of New York has already determined that the ASA does not violate the Due Process Clause and is constitutional. *Carroll v. Trump*, 650 F. Supp. 3d 213, 223-25 (S.D.N.Y. 2023). Accordingly, given that Bradberry was over eighteen years of age at the time the sexual offenses alleged in the Amended Complaint were committed against him, and because a lawsuit was initiated within the window provided under the ASA, the Defendants strain logic and grossly misunderstand the law by claiming that Bradberry's claims fail because there is no cognizable private right of action pursuant to the violations of Article 130 as contemplated under

4

the ASA. Yet, the plain language of the ASA makes this private right abundantly clear as it allows for an injured party to bring a cause of action "suffered as a result of conduct which would constitute a sexual offense as defined in article one hundred thirty of the penal law." N.Y. CPLR 214-j. In the instant case, Bradberry has more than satisfied this pleading burden while alleging the intentional violations of Article 130 crimes against the Defendant, Jeffries. Am. Compl. ¶¶ 231, 233-239, 243, 245, 248, 251, 480. This same practice of pleading intentional violations of Section 130 was done in *Carroll*, where the Court denied the defendant's motion to dismiss. *See* Complaint at 121-126, *Carroll v. Trump*, No. 22-CV-100016 (S.D.N.Y. 2022), ECF No. 1.

Should, *arguendo*, the Court find that the plain language of the ASA does not provide for a private right of action for the sexual offenses alleged in the Complaint pursuant to N.Y. CPLR 214-j, under New York law, "[i]n the absence of an express private right of action, plaintiff can seek civil relief in a plenary action based on a violation of the statue only if a legislative intent to create such a right of action is fairly implied in the statutory provisions and their legislative history." *Cruz v. TD Bank, N.A.*, 22 N.Y.3d 61, 70 (2013). When analyzing whether a private right of action exists, the courts look to three factors: "(1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; and (3) whether creation of such a right would be consistent with the legislative scheme." *Sheehy v. Big Flats Cmty. Day, Inc.*, 73 N.Y.2d 629, 633 (1989). This case satisfies the criteria for a private right of action. Plaintiff, David Bradberry and the Class he seeks to represent are members of the class of people the legislation intended to benefit. David Bradberry was a victim of a sexual offense over the age of eighteen placing him and other Class Members squarely in the class for whose particular benefit the statute was enacted. Moreover, based on the plain text of CPLR 214-j, allowing David Bradberry to proceed with a private right

action for sexual offenses as described in Article 130 of the New York Penal law is directly in line with the legislative purpose behind the ASA—to give survivors of sexual crimes with expired civil claims the chance to bring those claims forward. *See* New York Bill Jacket, 2019 S.B. 6574, Ch. 315 ("Statutes of limitations on sexual offense cases impose a ticking clock on how long victims are able to come forward if they want to seek charges. For crimes of sexual violence in particular, the clock ticks against the trauma and culture of silence that prevents victims from speaking out").

Finally, the creation of a such a right is directly consistent with the legislative intent, as the enactment of the ASA follows the lookback window provided by the Child Victim's Act, CPLR 214-g—which opened a window to bring a private right of action for conduct that constituted a sexual offense as defined in article one hundred thirty of the penal code for victims under the age of eighteen years old—and CPLR 213-c, which created private rights of action for specific violations of article one hundred thirty of the penal code.

Defendant relies on *Patterson*, to attempt to demonstrate that Plaintiff does not have private rights of action pursuant to certain sections of the New York Penal Law. *Patterson v. Patterson*, No. 1:16-cv-00844 (EAW), 2019 WL 1284346 (W.D.N.Y. Mar. 20, 2019). However, Defendant fails to recognize that: (1) *Patterson* was decided prior to the enactment of N.Y. CPLR 214-j; and (2) applying the *Patterson* Court's reasoning to 214-j, the Plaintiff has satisfied the pleading requirements for this specific cause of action as the legislature created a one-year window for a private right of action for *every* sexual offense as defined in article one hundred thirty of the penal law against a person eighteen years of age or older.

When dismissing the plaintiff's complaint in *Patterson*, the court found that the plaintiff did not have a private right of action to bring claims pursuant to the *specific* sections of New York Penal Law in which he sued under. *Id*. at *7-8. However, the analysis of the case was done prior

to the enactment of the ASA and only analyzed the validity of the claims under N.Y. CPLR § 213-c. *See Id.* CPLR § 213-c provided for a civil cause of action for victims who have suffered from *specific* violations of New York Penal Law Article 130. N.Y. CPLR § 213-c. The *Patterson* court recognized this right and reinforced it in its opinion. *Patterson*, 2019 WL 1284346 at *8 (finding "the New York state legislature provided a civil cause of action for victims who have suffered from the acts defined under various sections of the New York Penal Law Article 130"). Importantly and directly relevant, the court does go on to note that "[t]he legislature's designation of express provisions of Article 130 of the New York Penal Law that may be pursued in a civil action indicates that the legislature did not intend for there to be a private right to pursue the remaining provisions." *Id.*  Juxtaposing the language of § 213-c—which outlines *specific* crimes that provide for a civil cause of action for victims—with the language found in § 214-j, which encompasses *all* "sexual offenses as defined in article one hundred thirty"—and applying that same reasoning of the pre-ASA *Patterson* court's decision, it would follow that § 214-j provided for a civil cause of action for victims of *all* sexual offenses as defined in article one hundred thirty. Bradberry, in his Complaint, alleges that Jeffries engaged in the following Section 130 violations including but not limited to the following: N.Y. Penal Law §§ 130.20, 130.25, 130.50, 130.52, and 130.66. Am. Compl. ¶¶ 251, 480.

Given that Plaintiff has adequately demonstrated that he has pled a cognizable claim for which relief may be granted, the alleged violations of Article 130 are directly relevant to the civil tort of battery and should not be stricken as immaterial, impertinent, or scandalous allegations pursuant to Rule 12(f). "The elements of a battery claim are offensive bodily contact made with the intent to make contact." *Goff v. Clarke*, No. 98-2101, 2002 WL 126276, at *2 (N.Y. Sup. Ct. Jan. 22, 2002, *aff'd as modified*, 302 A.D.2d 725, (3d Dept. 2003) (citing *Laurie Marie M. v.*

*Jeffrey T.M.*, 159 A.D.2d 52, 55 (3d Dept. 1991). Plaintiff's pleading of the penal statutes with respect to the battery claim demonstrate the offensive bodily contact undertaken by Jeffries that gives rise to the common law battery claim that is being pled. Moreover, the fact that Plaintiff is bringing this claim pursuant to the ASA, which requires a violation of a sexual offense as defined in Article 130, only further demonstrates the requirement to plead the allegations in the manner in which they were pled as well as further reinforcing the need to incorporate the penal crimes and Jeffries's direct violations. *See* N.Y. CPLR 214-j.

**B.  Count X Is Not Duplicative of Plaintiff's Intentional Tort Claim.**

The only argument that Jeffries raises with respect to Bradberry's IIED claim is that it is duplicative of his battery claim. [DE 91] at 7.  In order to state a claim for Intentional Infliction of Emotional Distress (IIED), a plaintiff must prove: (1) extreme and outrageous conduct; (2) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and injury; and (4) severe emotional distress. *Yoo v. Choi*, 210 A.D.3d 1062, 1064 (2d Dept. 2022) (citing *Howell v. New York Post Co.*, 81 N.Y.2d 115, 121 (N.Y. 1993)). While it is true that certain courts have found that IIED claims duplicative of other tort claims should be dismissed, courts routinely uphold IIED claims that involve "elements that d[o] not entirely overlap with other tort claims at issue in the same lawsuit." *See, e.g.*, *Bender v. City of New York*, 78 F.3d 787, 790, 792 (2d Cir. 1996) (holding that while there are elements of fraud and coercion found in the TVPA, it does not "entirely overlap" with the IIED claim).

In *Guiffre*, the court denied defendant's motion to dismiss plaintiff's IIED claim as duplicative of her battery claim holding that, "[d]efendant's motion misunderstands the two causes of action" as "[p]laintiff's IIED claim arises, at least in part, from alleged conduct that forms no element of her battery claim." *Giuffre v. Andrew*, 579 F.Supp.3d 429, 451-452 (S.D.N.Y. 2022).

The court specifically found that by alleging that the defendant caused the plaintiff to witness the abuse of another victim, there is injury that flows from different conduct than the alleged non-consensual physical contact. *Id.* At 452. The facts here are identical, if not more egregious than those in *Giuffre*. Here, "Jeffries and Smith took David Bradberry into a room where two other men were naked and having sex." Am. Compl. ¶ 234. Jeffries told Bradberry that he would like poppers while he held David Bradberry's head and put the popper bottle under his nose until Bradberry felt light-headed and confused. *Id.* ¶ 235. Bradberry then had to watch as Smith made Jeffries put a condom on before Smith and the "four older, larger, physically fit men who appeared to be security guards" watched Jeffries "anally rape[] Bradberry." *Id.* ¶¶ 235-238. Most pertinently, when he finished, Jeffries "physically pushed and maneuvered David Bradberry with his hands, forcing Bradberry to engage in sexual conduct with other men for Jeffries's sexual gratification." *Id.* ¶ 239. These distinguishing facts allege injury flowing from different conduct than the alleged battery by Jeffries and clearly form an independent basis for an IIED claim against Jeffries. *See also id.* ¶¶ 9; 36; 62; 141; 232-234 (containing other distinguishing allegations relating to the false promises and the outrageous deception utilized by Jeffries to dupe victims into believing that the atrocities being committed against them were being done for an ultimate purpose—to become an Abercrombie model).

To the extent that Jeffries attempts to later raise arguments as to the statute of limitations pursuant to the ASA or the sufficiency of the elements pled, such a reply would be improper in accord with Second Circuit law. *See, e.g.*, *Knipe v. Skinner*, 999 F. 2d 708, 711 (2d Cir. 1993) ("[a]rguments may not be made for the first time in a reply brief"). Again, Jeffries's **only** argument for dismissal of Bradberry's IIED claim is his argument that it is duplicative of Bradberry's battery claim. That is simply inaccurate. As a consequence, Bradberry's IIED claim should be permitted

to proceed against Jeffries.

## II.    PLAINTIFF HAS ADEQUATELY PLED THE REQUIRED GENDER MOTIVATION OR GENDER ANIMUS PURSUANT TO ADMINISTRATIVE CODE § 10-1101—et seq.

To state a claim under the GMVA, Bradberry was required to allege that: "(1) the alleged act constitutes a misdemeanor or felony against the plaintiff; (2) presenting a serious risk of physical injury; (3) that was perpetrated because of plaintiff's gender; (4) in part because of animus against plaintiff's gender; and (4) [sic] resulted in injury." *Hughes v Twenty-First Century Fox, Inc.*, 304 F. Supp 3d 429, 455 (S.D.N.Y. 2018). Jeffries relies on *Hughes* for the position that the egregious nature of the allegations of a rape fail to state any facts showing the defendant's alleged acts were caused due to gender. [DE 91] at 8-9. However, Jeffries conveniently disregards more recent decisions analyzing the GMVA wherein courts held that allegations of rape and sexual assault are inherently sufficient to state a claim under Victims of Gender-Motivated Violence Protection Law because those types of crimes are motivated, at least in part, by animus based on the victim's gender. *Breest v. Haggis*, 180 A.D. 3d 83, 84 (N.Y. 1st Dept. 2019).

If a plaintiff's pleading burden would be sufficient solely with a limited allegation of a sexual assault, Plaintiff has gone above and beyond these requirements for this specific claim. Bradberry has alleged that the entire scheme itself, and the crimes committed thereof, were targeted specifically at men based on their gender. Am. Compl. ¶¶ 10, 252, 365, 368, 376. The Amended Complaint is devoid of any crimes committed against female models, only furthering the argument that Jeffries and the venture specifically targeted men. Defendant urges this Court to take the insulting position that the court's findings in the *Breest* decision should not apply because there have been no cases brought under the GMVA that involve allegations of a man sexually assaulting another man. Yet, the *Breest* decision does not distinguish between the gender of the victim nor

10

the perpetrator. *Breest*, 180 A.D. 3d at 83-84. In fact, the *Breest* court states that the animus based on the victim's gender was sufficiently pled solely by the nature of the crimes alleged. *Id*. The analysis here is not whether the victim and the perpetrator share the same gender, rather, it is the nature of the alleged crimes:

> **"Rape and sexual assault are, by definition, actions taken against the victim without the victim's consent. Without consent, sexual acts such as those alleged are a violation of the victim's bodily autonomy and an expression of the perpetrator's contempt for that autonomy. Coerced sexual activity is dehumanizing and fear-inducing. Malice or ill will based on gender is apparent from the alleged commission of the act itself. Animus inheres where consent is absent."**

> *Id*.

Accordingly, the fact that the Jeffries is unable to find a decision under the GMVA that involves a sexual assault of a man against a man has no bearing on the plausibility of Plaintiff's claim. Plaintiff's allegations of coerced sexual activity evince malice or ill will based on gender from the alleged commission of the act itself. The specific allegations into Jeffries's coercive sexual assaults are detailed throughout the Amended Complaint. Am. Compl. ¶¶ 65, 191, 194-196, 246, 253, 257, 260. As a result, Plaintiff has successfully pled a claim under the GMVA.

### III.    BRADBERRY'S TVPA RELATED COUNTS (XIII-XVI) ARE NOT BARRED BY THE 10-YEAR STATUTE OF LIMITATIONS.

David Bradberry has adequately pled claims for relief brought under the TVPA in his Amended Complaint as evinced in Counts XIII-XVI. In Jeffries's Motion to Dismiss, the Defendant fails to raise the sufficiency of the claims themselves, and instead only seeks to defend himself on the expiration of the statute of limitations. [DE 91] at 10-15. As a result, any argument that Jeffries may seek to raise on Reply as to the sufficiency of the pleadings have been abandoned by the Defendant. *See, e.g.*, *Knipe*, 999 F. 2d at 711 ("[a]rguments may not be made for the first time in a reply brief"). Accordingly, so long as this Court finds that David Bradberry has

demonstrated that his claims are timely for the reasons set forth herein, all of Plaintiff's TVPA claims against Jeffries cannot be dismissed.

**A. Bradberry Had Until December 9, 2024, to File his TVPA Claims.**

"A court must deny a motion to dismiss based on the statute of limitations unless all assertions of the complaint, as read with required liberality, would not permit the plaintiffs to prove that the statute was tolled." *Doe v. Baram*, 20-civ-9522 (ER), 2021 WL 4847076 at *3 (S.D.N.Y. 2021) (denying defendant's motion to dismiss 13-year-old TVPA claims). A motion to dismiss based on timeliness "should not be granted unless it appears *beyond doubt* that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Ortiz v. Cornetta*, 867 F.2d 146, 148 (2d Cir. 1989) (internal quotation marks omitted). In this case, Bradberry alleges the existence of a coercive sex trafficking operation through (at least) December 2014 (*see, e.g.*, Am. Compl. ¶¶ 150, 154, 159, 218) and Jeffries fails to cite any authority for the proposition that on behalf of the Class, Bradberry needed to plead around its timeliness defense. Nonetheless, Jeffries contends that because Bradberry was abused through 2010, his claim is untimely. Jeffries ignores hornbook conspiracy law holding that, for purposes of statute of limitations, a conspiracy continues so long as overt acts in furtherance of the conspiracy continue.

For purposes of determining a statute of limitations applicable to a conspiracy, Bradberry need only prove that there was "one overt act in furtherance of the conspiratorial agreement . . . performed within that period [of the statute of limitations]." *United States v. Ben Zvi*, 242 F.3d 89, 97 (2d Cir. 2001) ("[T]he crucial question in determining whether the statute of limitations has run is the scope of the conspiratorial agreement, for it is that which determines both the duration of the conspiracy, and whether the act relied on as an overt act may properly be

regarded as in furtherance of the conspiracy[2].") Jeffries concedes that the TVPA has a ten-year statute of limitations, which naturally extends its TVPA liability back to October 27, 2013. [DE 91] at 10. And Jeffries does not dispute that Bradberry alleges that the sex-trafficking venture continued through the time that he stepped down as CEO in 2014. *See* Am. Compl. ¶ 1 (alleging "Abercrombie knew it that it was providing the financial lifeblood for a sex-trafficking organization led by its CEO from at least 1992 through 2014…"); *Id*. ¶ 61 ("From at least 1992 through 2014 Jeffries—as the CEO of Abercrombie—and Smith hosted parties for prospective Abercrombie models around the world, including at Jeffries's homes in New York City"); *Id*. ¶ 118 (alleging the sex-trafficking venture continued until Jeffries left the company in 2014 and that the venture also operated to conceal the sex trafficking from law enforcement through 2014). In fact, Bradberry goes as far as to allege that the sex-trafficking venture only ended in 2014 once Abercrombie had finally made a clean break from Jeffries and he lost the legitimate infrastructure for the criminal enterprise. *See Id*. ¶¶ 150; 159.

Jeffries ignores these allegations, including those of an on-going coverup and other acts directly causing harm to Bradberry well beyond the 2010 abuse. For example, Bradberry alleges—without dispute from Jeffries—that Jeffries compelled him to sign an NDA, "designed to intimidate, threaten, and deter them from ever speaking about the abuse and trafficking they endured." *Id*. ¶¶ 94-99; 101. With direct knowledge of this sex-trafficking conspiracy, Jeffries remained liable for acts of the conspiracy until a clean break was made by either party and that party affirmatively communicated its abandonment of the conspiracy, which at the earliest is the date of Jeffries' departure from the company on December 9, 2014. *See United States v. Leslie*,

---

[2] *Accord* WAYNE R. LAFAVE & JENS DAVID OHLIN, CRIMINAL LAW § 12.3 at 839 (7th ed. 2023) ("the statute of limitations for the crime of conspiracy does not begin to run at the time of the agreement or (when required by statute) the overt act, but *only from the point at which the conspiracy is terminated*. For this purpose, 'the conspiracy continues up to the abandonment or success'" (quoting *United States v. Kissel*, 218 U.S. 610 (1910)).

658 F.3d 140, 143 (2d Cir. 2011) (withdrawal from conspiracy requires proof of "making of a clean [break] to the authorities" or "communication of the abandonment in a manner reasonably calculated to reach co-conspirators"); Am. Compl. ¶ 150 (alleging that the sex-trafficking venture was unable to continue only once Jeffries lost the legitimate infrastructure for the criminal enterprise in 2014). Bradberry alleges that the TVPA claims against the Defendants ran through December 9, 2014, placing Jeffries's relationship with Abercrombie and the sex-trafficking venture squarely within the limitations period.

### B.  Bradberry's Claims Are Permitted by the Doctrine of Equitable Tolling.

Similarly, "[u]nder New York law, the doctrines of equitable tolling or equitable estoppel may be invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action." *Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007). "To benefit from equitable tolling, a litigant must allege that extraordinary circumstances prevented him from acting in a timely manner," and he must raise those allegations in the Complaint. *Guo v. IBM 401(k) Plus Plan,* 95 F. Supp. 3d 512, 525 (S.D.N.Y. 2015) (citing *Chao v. Xanadu Boutique, Inc.,* 380 F.Supp.2d 134, 136 (E.D.N.Y. 2005) (explaining that "[a]lthough [the] [c]ourt agree[d] that equitable tolling may apply [to the plaintiff's claim] ... [the] plaintiff fail [ed] to plead in the complaint circumstances that justify equitable tolling, despite [the] plaintiff's attempt to raise certain factual allegations for the first time in its memorandum of law," and therefore granting the defendants' motion to dismiss "without prejudice to [the] plaintiff's right to file an amended complaint setting forth allegations satisfying equitable tolling").

With respect to equitable tolling, the Second Circuit has cautioned that it "often raises fact-specific issues premature for resolution on a Rule 12(b)(6) motion, before plaintiff can develop the factual record. *Clark v. Hanley*, 89 F. 4th 78, 94 (2d Cir. 2023). As a result, a plaintiff need only

plead facts that plausibly suggest equitable tolling should apply. *See Bisson v. Martin Luther King Jr. Health Clinic*, No. 07-5416-cv, 2008 WL 4951045 at *1 (Nov. 20, 2008) (finding it plausible that the defendants by telling plaintiff she didn't need a follow up visit, fraudulently or deceptively delayed discovery of her condition and prevented her from filing a timely action). Here, Bradberry has properly pled facts sufficient to justify equitable tolling with respect to his forced entry into the NDA, which blocked his ability to talk to a lawyer or file a lawsuit to assert his rights against Jeffries. In fact, Bradberry was not even permitted to retain a copy of the NDA that he was forced to sign under duress and as such cannot present the same to the Court. Am. Compl. ¶ 226. Pertinently, none of the cases cited by Jeffries involved an NDA, which in this case directly interfered with Bradberry's ability to pursue further action. Bradberry's fear resulting from the prevention of egress from the abuse, and his fear that he would endure physical harm if he were to report the abuse or otherwise come forward have been plausibly pled. ¶¶ 95-110.[3]

### C. Bradberry's Claims Are Permitted by the Doctrine of Equitable Estoppel.

Should the Court disagree with Bradberry's argument above, equitable estoppel applies where it would be unjust to allow a defendant to assert a statute of limitations defense. *Geiss v. Weinstein Company Holdings LLC*, 383 F. Supp. 3d 156 (2019). To apply the doctrine, a plaintiff must show that "defendant's actions induced plaintiff to refrain from commencing a timely action." *Wagley v. JP Morgan Chase Bank. N.A.*, 18 Civ. 8668 (PGG), 2020 WL 5768688 at *8 (S.D.N.Y. Sept. 26, 2020). Such actions "must entail 'affirmative steps to prevent a plaintiff from bringing suit.'" *Geiss*, 282 F. Supp. 3d at 172. Moreover, "when a plaintiff relies on a theory of equitable estoppel to save a claim that otherwise appears untimely on its face, the plaintiff must

---

[3] *Compare with Levin v. Sarah Lawrence Coll.*, 23-cv-10236 (LJL), 2024 WL 4026966, at *13–14 (S.D.N.Y. Sept. 3, 2024) (highlighted by Jeffries as the court rejected equitable tolling arguments; however, in that case, Plaintiffs merely alleged that they were manipulated).

specifically plead facts that make entitlement to estoppel plausible (not merely possible). *Thea v. Kleinhandler*, 807 F.3d 492, 501 (2d Cir. 2015) (internal citations omitted).

Application of the doctrine of equitable estoppel is sparce and was designed for a case exactly like this one wherein each victim of the Jeffries sex-trafficking operation was forced to sign a Non-Disclosure Agreement under extreme duress.  *See* Am. Compl. ¶¶ 95-110, 143, 146. Bradberry and Class Members were quite literally forced to sign the document without opportunity to read or review the content. They could not retain a copy of the document and were expressly told that the document prevented them from ever sharing the details of what happened with anyone under any circumstance. *Id*. ¶¶ 77-80. The men were then violently sexually assaulted by Jeffries while individuals wearing Abercrombie apparel and at times carrying firearms prevented them from leaving the Abercrombie events, and were told that if they ever came forward, they would be made to suffer physically, financially, reputationally, and otherwise. *Id*. ¶¶ 102-105; 123; 236. Because of the extreme power imbalance between the men and Jeffries, the men reasonably believed that defiance would result in serious harm to them. More alarming, "[a]fter Jeffries left the company, Abercrombie was aware of and retained emails, electronically stored correspondence, and hard copy documents evidencing the years long sexual abuse and trafficking scheme that was operated through and for the benefit of Abercrombie, Jeffries, and Smith." *Id*. ¶ 279. Because of this, "Abercrombie caused Jeffries's victims to continue to live in fear for nearly another decade before his sex-trafficking operation was exposed." *Id*. ¶ 280. There can be no doubt based on the allegations made within the four corners of the Amended Complaint that Bradberry was induced to stay silent about his abuse at least until the time that Jeffries left Abercrombie in 2014.

Nonetheless, this jurisdiction has routinely held that whether or not equitable estoppel

applies is a question of fact for the jury. *Bensky v. Indyke*, 24-CV-1204 (AS), 2024 WL 3676819 at *11 (Aug. 5, 2024) (recognizing that "equitable doctrines are inherently fact-bound and are rarely fit for a motion to dismiss"); *Holmes v. Lorch*, 329 F. Supp 2d 516, 523-26 (S.D.N.Y. 2004); *Mancuso v. Consolidated Edison Co. of New York, Inc.,* 905 F. Supp. 1251, 1258-1259 (S.D.N.Y. 1995). Therefore, Jeffries's argument against equitable estoppel is at best an argument to be made at Summary Judgment, if not ultimately before a jury, and is not ripe based on the sufficiency of the factual allegations pled in Bradberry's Amended Complaint. *Ion Audio, LLC v. Bed, Bath & Beyond, Inc*., 15-CV-8292 (KMW), 2019 WL 1494398 at *10 (S.D.N.Y. April 2, 2019).

## **CONCLUSION**

Finally, should the Court find that Plaintiff has not sufficiently pled facts to support at least one of his claims against Jeffries, Bradberry seeks leave to amend his complaint to do so. *See, e.g.*, *Wade Park Land Holdings, LLC v. Kalikow*, 21-cv-1657 (LJL), 2022 WL 2479110 at *3 (S.D.N.Y. July 6, 2022) (indicating that the Second Circuit "strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6)" and that leave should be granted when the court "cannot say that any amendment would be futile.").

Notwithstanding, for the reasons delineated herein, the Court should deny Jeffries's Motion to Dismiss Plaintiff's Amended Complaint.

17

Dated: October 18, 2024

Respectfully Submitted,

/s/ *Bradley Edwards*
Bradley Edwards
Brittany Henderson
Dean Kaire

**EDWARDS HENDERSON**
425 North Andrews Avenue, Suite 2
Fort Lauderdale, Florida 33301
Telephone: (954) 524-2820
Fax: (954) 524-2822
Email: brad@cvlf.com
      brittany@cvlf.com
      dean@cvlf.com
      ecf@cvlf.com